## JORDAN *v.* THE STATE.

ATKINSON, J.  1. The court charged the jury: "The defendant has entered three pleas in this case.  In the first place, he says that he didn't kill the deceased; he says in the second place, that if he killed the deceased it was an accident; in the third place, he says that if she was killed by him it was justifiable homicide."  *Held:*

(*a*) While it was not strictly accurate for the court to say that the defendant filed three pleas, inasmuch as he only filed a plea of not guilty, nevertheless this statement is to be construed as meaning that the defendant's plea and his statement before the jury raised three theories of the case under which he was not guilty.

(*b*) The State having introduced evidence which authorized the jury to find that the accused killed the decedent, and the accused having by his statement set forth a state of facts which would have justified him in slaying the deceased, it was not error for the court to charge: "He says that if she was killed by him it was justifiable homicide."  Properly construed, this part of the charge last quoted merely submits to the jury the law of justifiable homicide as based on self-defense, and. under the evidence in the case and the defendant's statement the court was authorized to charge on the subject of justifiable homicide.

(*c*) That portion of the charge in which the judge submitted as a contention of the defendant that if he killed the decedent it was an accident was not authorized by the evidence nor the statement of the defendant, and was therefore erroneous.

2. The charge on the subjects of voluntary manslaughter and self-defense set forth respectively in the second and third grounds of the amended motion for new trial states correct principles of law applicable to the case as made by the evidence and the prisoner's statement before the jury.  It is not a good ground of attack upon these parts of the charge that the court did not give some other principle of law applicable to the case.

3. The criticism of the charge contained in the fourth ground of the amended motion for new trial is to be construed as an exception to the charge as a whole, and is without merit.

*Judgment reversed.  Hill and Hines, JJ., dissent.  The other Justices concur.*

No. 4984.  MAY 14, 1926.

Murder.  Before Judge Camp.  Laurens superior court.  June 6, 1925.

JORDAN v. STATE. (162

*Hal B. Wimberly* and *George B. Davis,* for plaintiff in error.

*George M. Napier, attorney-general, Fred Kea, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

HINES, J., dissenting. I feel constrained to dissent from the grant of a new trial in this case. The majority of the court grant a new trial upon the ground that the trial judge erred in submitting to the jury, as one of the contentions of the defendant, that if he killed the deceased it was an accident, because such submission was not authorized by the evidence or the statement of the defendant. I concede that the trial judge erred in stating to the jury that the defendant made this contention, because this instruction was not supported by the evidence or the statement of the defendant. But not every error requires the grant of a new trial.

The evidence for the State made this case: At about ten o'clock at night the defendant went to the home of Addie Rollison. He did not knock before entering. As he walked in at the door, Pledger Smith said to the defendant, "Hey, Will." The defendant made no reply, but walked on, caught Addie Rollison by the arm and commenced cutting her with a knife. He cut her up badly. It took fifty or fifty-four stitches to sew up the wound. Addie. Rollison ran out of her room into the hall of the house. The deceased was standing in the hall when Addie Rollison got out there. Addie Rollison called to Julia Rountree to help her. The defendant had Addie Rollison down on the floor at the time, and was down on her when he cut her in the back. Addie Rollison requested the deceased to make the defendant let her alone. The deceased ran up and said, "Will! Will! Will!" Then the defendant with his knife cut the deceased. The deceased ran out the door, saying that she was cut to death. Addie Rollison did nothing to provoke the defendant to cut her. She had no knife or other weapon, and was not endeavoring in any way to hurt the defendant. The deceased did nothing to make the defendant cut her. The deceased died from being cut by the defendant with his knife. A pocket-knife was picked up on the back porch of the house, where the deceased was lying in her blood. This knife had blood upon it, and it was identified as the knife of the deceased. There were in the house, at the time the deceased was cut by the defendant, Addie Rollison, Buford Jones, Pledger Smith, and

Lawton Mincey; who were eye-witnesses to the homicide; and they all gave substantially the above account of the manner' in which the deceased met her death. A deputy sheriff went to arrest the defendant. He did not find the defendant at his home, but found him at the house of another negro some miles away. When the officer approached this house the defendant fled. The officer pursued him for a half a mile, overtook and arrested him. In his possession when arrested was a knife with blood upon it. The officer testified that the defendant did not say anything to him about having received a wound during the difficulty resulting in the death of the deceased, that the clothes of the defendant were not cut, and that there was no cut place on his shoulder. The defendant and Addie Rollison had been sweethearts. Addie Rollison had not seen him on the night of the killing prior to its occurrence.

The defendant introduced no evidence, but made substantially this statement: He had been going with Addie Rollison. She made two trips to his house on the night of the killing and prior thereto. The last time she came the deceased came with her. Addie Rollison told him that she wanted him to come to her house, that she wanted to have a talk with him. He said, "All right." When he got there that night he knocked on the back door, and when he knocked somebody said, "Come in." He went in. When he got in the house Pledger Smith and the deceased were in the hallway. Buford Jones and Addie Rollison were in the room. When he got in the room Addie Rollison made towards him with a switch-bladed knife. He knew she would cut him, because she had cut him once before. He had a cut place up here now [indicating]; he saw they were fixing to gang him. All of them had knives. He tried to run out of the house. The front door was closed. He had to try to save himself. He was trying to defend himself. All of them were trying to doubleteam on him. All of them had knives and were after him. He had a knife, and had to defend himself the best he could. They framed up on him and tried to hurt him. He ran out of the house, and Addie Rollison ran out after him with a knife. He knocked her down in running out of the house. As he ran out of the door somebody struck at him with a knife, along here [indicating], and he ran out of the back door and got away. He did not cut

the deceased. Addie Rollison had a knife, and she cut the deceased herself while she was trying to cut him.

Under the evidence in this case, but one verdict could properly be returned by a jury, and that a verdict of guilty. In *Johnson* v. *State,* 14 *Ga.* 55, 65, this court said: "A new trial ought never to be granted, notwithstanding some mistake or even misdirection by the judge, provided the revisioning court is perfectly satisfied that justice has been done; and that, upon the evidence, no other verdict could properly have been found." In *Hagar* v. *State,* 71 *Ga.* 164, this court said: "The evidence is overwhelming that the defendant is guilty; and where such is the case, even errors in the admission or rejection of testimony, or in the charge of the court, will not operate so as to require a new trial." The defendant's main defense was self-defense. In his statement he said that all five persons were armed with knives, had combined against him and were attempting to cut him, and that he was acting in self-defense. His further defense was that the deceased was accidentally killed by Addie Rollison when she was attempting to cut him with a knife she had. If the jury had believed either of these theories of defense, they would not have convicted the defendant, notwithstanding the above erroneous instruction from the trial judge. The administration of appellate justice should be practical. New trials should not be granted when the verdict returned was required by the evidence, and where on another trial the same verdict would, in all human probability, be returned. We should not by scholastic reasoning upset such a verdict. So I feel constrained to dissent from the conclusion reached by the majority. I am instructed to say that Mr. Justice Hill concurs in this dissent.